**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SANDOZ INC.,

Plaintiff,

v.

LABORATORIOS LEÓN FARMA, S.A., and CHEMO ESPAÑA S.L. and CHEMO Holding S.L., previously known and doing business as "CHEMO GROUP" and now known and doing business as "INSUD PHARMA GROUP,"

Defendants.

CIVIL ACTION NO:

Civil Action

**COMPLAINT**

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) in that Plaintiff, a corporation, is a citizen of Colorado and New Jersey; Defendants, are citizens of a foreign country; and the amount in controversy exceeds the sum of $75,000 exclusive of interest and costs.

2. Venue is proper in this District pursuant to 28 U.S.C. § 1391(c) in that Plaintiff and Defendants have consented to jurisdiction and venue in this District pursuant to Section 13.4 of the parties' Supply Agreement described below.

## FACTUAL ALLEGATIONS

### A. The Parties

3. Plaintiff Sandoz Inc. ("Plaintiff" or "Sandoz") is a corporation organized under the laws of Colorado with its principal place of business located at 100 College Road West, Princeton, New Jersey. For purposes of diversity jurisdiction, Sandoz is a citizen of Colorado and New Jersey.

4. Defendant Laboratorios León Farma, S.A. ("Defendant" or "León Farma") is a corporation organized under the laws of Spain with its registered office and principal place of business located at Calle La Vallina s/n, P.I. Navatejera - 24008 León, Spain. This Court has jurisdiction over León Farma due to the consent to the jurisdiction of this Court by León Farma in the parties' Supply Agreement, as described below. For purposes of diversity of jurisdiction, Defendant León Farma is a citizen of Spain.

5. At all relevant times herein, León Farma was a direct wholly-owned subsidiary of Defendant Chemo Holding S.L., a Spanish limited liability company, with its registered office and principal place of business located at Manuel Pombo Angulo, 28, 3d Floor 28050 Madrid, Spain. Upon information and belief, the ultimate member and parent entity of Chemo Holding S.L. is a German corporation headquartered in Germany and, as such, for purposes of diversity of jurisdiction, Chemo Holding S.L. is either a citizen of Spain or Germany.

6. Upon information and belief, at all relevant times, defendants Chemo Holding S.L. was a wholly owned subsidiary, and León Farma an indirect wholly-owned subsidiary (through Chemo Holding S.L.), of Defendant Chemo España, S.L., a Spanish limited liability company with its registered office and principal place of business located at Manuel Pombo Angulo, 28, 3d Floor 28050 Madrid, Spain. Upon information and belief, the ultimate member and parent entity of Chemo España S.L., is a German corporation headquartered in Germany and, as such, for purposes of diversity of jurisdiction, Chemo España S.L. is either a citizen of Spain or Germany.

**B. León Farma Was The Alter Ego and Instrumentality of The Chemo Group, Now Known As Insud Pharma Group**

7. Upon information and belief, at all relevant times herein, Defendants Chemo España S.L. and Chemo Holding S.L. (hereinafter "Chemo Group") and their subsidiaries, including León Farma, were and are operated as a single enterprise, known and operated as the

"Chemo Group" and now known and operated as "Insud Pharma Group."

8. Upon information and belief, at all relevant times herein, León Farma shared officers and directors with Chemo Group (now Insud Pharma Group), and was the alter ego and instrumentality of the Chemo Group (now Insud Pharma Group) which controlled and dominated León Farma's board of directors, officers, management, management decisions, business decisions and finances.

9. Upon information and belief, Chemo Group dominated, controlled and dictated the management decisions of León Farma affecting and concerning Plaintiff and Plaintiff's relationship with León Farma including, but not limited to, the recall of León Farma's product supplied to Plaintiff as described below; the denial of Plaintiff's demand for indemnification and defense, as set forth below, under Plaintiff's Supply Agreement with León Farma; and the transactions, events and occurrences that are the subject of this case.

10. As a result, it would be unjust and inequitable not to hold Chemo Group (now Insud Pharma Group) liable for the obligations of León Farma to Plaintiff due to Chemo Group's (Insud Pharma Group's) domination and control over León Farma and its management decisions with respect to León Farma's relationship with Plaintiff and the transactions, events and occurrences that are the subject of this case.

11. Because León Farma is Chemo Group's (Insud Pharma Group's) alter ego and instrumentality, and because Chemo Group exercised dominion and control over León Farma's management decisions affecting Plaintiff, and the transactions, events and occurrences that are the subject this case., this Court has jurisdiction over Chemo Group (now Insud Pharma Group) as a result of having jurisdiction over León Farma.

**C. <u>The Sandoz - León Farma Supply Agreement Dated October 22, 2004</u>**

12. On October 22, 2004, Sandoz N.V., an affiliate of Plaintiff Sandoz, and Defendant León Farma entered into a Supply Agreement which, among other things, governed León Farma's manufacture, packaging, inspection, shipment and supply of oral contraceptives to Sandoz, N.V. and its affiliates, for distribution in the United States.

13. Section 11.1 of the Supply Agreement contained an Indemnification provision, which provided:

> 11.1 <u>Sandoz Indemnified by León</u>. León shall indemnify and hold the Sandoz Indemnified Parties harmless from and against any Liability paid or payable by the Sandoz Indemnified Parties to a Third Party as a result of any Claim, insofar as such Liability or actions in respect thereof result from, arise out of or are based on: (a) any misrepresentation (or alleged misrepresentation) or breach (or alleged breach) of any of the representations, warranties, covenants or agreements made by León in this Supply Agreement including without limitation the representations and warranties of León set forth in Article 10 (Representations and Warranties) of this Supply Agreement; or (b) the Manufacture, Development, Processing and supply of a Product by León.

14. Section 1.43 of the Supply Agreement defined "Sandoz Indemnified Parties" as "Sandoz [N.V.], its Affiliates, Sublicensees, any of their successors or assigns, and any of their respective then-current or then-former directors, officers or employers." Plaintiff Sandoz is a "Sandoz Indemnified Party" under Sections 1.43 and 11.1 of the Supply Agreement.

15. Section 1.29 of the Supply Agreement defined "Liability" as "all losses, costs, damages, judgments, settlements, interest, fees or expenses including, without limitation, all reasonable attorneys' fees, experts' or consultants' fees, expenses and costs, related to or arising from this Supply Agreement or any Product developed, made, sold, marketed or otherwise distributed by the Parties."

16. Section 1.11 of the Supply Agreement defined "Claim" as "any claim, action, suit, demand or other legal assertion or proceeding brought by a Third Party against any of the Sandoz

Indemnified Parties and/or the León Indemnified Parties related to any Liability."

17. Section 10.5 of the Supply Agreement contained the following product conformance warranty by León Farma:

> 10.5 Product Conformance. León represents, warrants and covenants that each Finished Product supplied to Sandoz hereunder will Conform in all respects.

18. Section 1.15 defined "Conform" to mean that the Product is, among other things, "free from defects in design, material and workmanship."

19. Section 11.3 of the Supply Agreement contained a "Prompt Notice Requirement" with respect to the parties' indemnification obligations, and provides that:

> 11.3 Prompt Notice Required. No claim for indemnification hereunder shall be valid unless notice of the matter which may give rise to such claim is given in writing by the indemnitee (the "Indemnitee") to the Party against whom indemnification may be sought (the "Indemnitor") as soon as reasonably practicable after such Indemnitee becomes aware of such claim; provided, however, that the failure to notify the Indemnitor shall not relieve it from any liability that it may have to the Indemnitee otherwise unless the Indemnitor demonstrates that the defense of the underlying Claim has been materially prejudiced by such failure to provide timely notice. Such notice shall request indemnification and describe the Liability and Claim giving rise to the request for indemnification, and provide relevant details thereof. The Indemnitor shall notify the Indemnitee no later than thirty (30) days from such notice of its intention to assume the defense of any such Claim. If the Indemnitor fails to give Indemnitee notice of its intention to defend any such Claim as provided in this Section 11.3, the Indemnitee involved shall have the right to assume the defense thereof with counsel of its choice, at the Indemnitor's expense, and defend, settle or otherwise dispose of such Claim with the consent of the Indemnitor, not to be unreasonably withheld or delayed.

20. The Supply Agreement did not define "prompt notice," nor did it set a specific deadline by which written notice must be provided to be considered "prompt."

21. Section 12.2 of the Supply Agreement required León Farma to maintain product liability insurance, as follows:

> 12.2 Leon Insurance. Without prejudice to any rights or remedies Sandoz may have under this Supply Agreement or otherwise at law generally, Leon shall (at Leon's sole cost and expense) maintain in full force and effect during the Term (including any extensions or renewals thereto) and for a five (5) year period after the expiration or

> effective termination of this Supply Agreement, adequate product liability insurance (including for these purposes insurance covering the risks and liabilities arising out of Leon's breach of this Supply Agreement) with yearly coverage of at least US$5,000,000 per occurrence and US$10,000,000 in the aggregate. . . .

22. Sections 13.4, 13.5 and 13.6 of the Supply Agreement contained the following provisions governing jurisdiction, venue, governing law and waiver of a jury trial:

> 13.4 Jurisdiction. León and Sandoz agree to irrevocably submit to the exclusive jurisdiction of (i) the Supreme Court of the State of New York, New York County, U.S.A., or (ii) the United States District Court for the Southern District of New York U.S.A., for the purposes of any suit, action or other proceeding arising out of this Supply Agreement or any transaction contemplated hereby. Each Party agrees to commence any such action, suit or proceeding either in the United States District Court for the Southern District of New York, U.S.A. or, if such suit, action or other proceeding may not be brought in such court for jurisdictional reasons, in the Supreme Court of the State of New York, New York County, U.S.A. Each Party further agrees that service of any process, summons, notice or document by U.S. registered mail or recognized international courier service to such Party's respective address set forth in Section 13.14 of this Supply Agreement shall be effective service of process for any action, suit or proceeding in New York with respect to any matters to which it has submitted to jurisdiction in this Supply Agreement. Each Party irrevocably and unconditionally waives any objection to the laying of venue of any action, suit or proceeding arising out of this Supply Agreement or the transactions contemplated hereby in (i) the Supreme Court of the State of New York, New York County, U.S.A., or (ii) the United States District Court for the Southern District of New York, U.S.A., and hereby further irrevocably and unconditionally waives and agrees not to plead or claim in any such court that any such action, suit or proceeding brought in any such court has been brought in an inconvenient forum *(e.g., under the doctrine of forum non conveniens or pursuant to 28 U.S.*C. *§ 1404(a))*. Each Party hereto agrees that any such proceeding shall be conducted solely in the English language.
>
> 13.5 Governing Law. This Supply Agreement and all matters arising directly or indirectly herefrom shall be governed by and construed and enforced in accordance with the internal laws of the State of New York, U.S.A. applicable to agreements made and to be performed entirely in such state, without giving effect to the conflict of law principles thereof. The Parties expressly agree that the United Nations Convention on Contracts for the International Sale of Goods shall not apply to this Supply Agreement or any Party's performance hereunder.
>
> 13.6 Waiver of Jury Trial. EACH PARTY HERETO WAIVES, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HA VE TO A TRIAL BY JURY IN RESPECT TO ANY CASE DIRECTLY OR INDIRECTLY ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS SUPPLY AGREEMENT, AND EACH PARTY HERETO (i) CERTIFIES THAT

> NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY WOULD NOT, IN THE EVENT OF CASE, SEEK TO ENFORCE THAT FOREGOING WAIVER, AND (ii) ACKNOWLEDGES THAT IT AND THE OTHER PARTY HERETO HAS BEEN INDUCED TO ENTER INTO THIS SUPPLY AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS PARAGRAPH.

23. Section 13.2 of the Supply Agreement contained an informal dispute resolution procedure, as follows:

> 13.2 Informal Dispute Resolution. Unless otherwise expressly provided for herein, any claim or controversy between the Parties arising out of or relating to the execution, interpretation and performance of this Supply Agreement (including the validity, scope and enforceability of this provision) shall be identified in writing and presented to the other Party. Within fourteen (14) days after delivery of such notice of dispute, the Sandoz Executive Officer and the León Executive Officer shall meet at a mutually acceptable time and place, and thereafter as often as they reasonably deem necessary, to attempt to resolve the dispute in good faith. All reasonable requests for information made by one Party to another shall be honored. All negotiations pursuant to this clause are confidential and shall be treated as compromise and settlement negotiations for purposes of applicable rules of evidence. If such Executive Officers cannot resolve such dispute within fourteen (14) days after such meeting, then each Party reserves its right to any and all remedies available under law or equity with respect to any other dispute.

24. Section 13.10 of the Supply Agreement contained the following merger clause:

> 13.10 Entire Agreement. This Supply Agreement, including any schedules or exhibits hereto, contains the entire agreement and understanding between the Parties relating to the subject matter hereof, and all prior agreements and understandings between the Parties and relating to the subject matter hereof are superseded by this Supply Agreement. Neither Party shall be liable or bound to the other Party in any manner by any representations, warranties or covenants relating to such subject matter except as specifically set forth herein.

### D. The *Kinsey* Case

25. Among the products that Defendant León Farma manufactured, packaged and supplied to Plaintiff Sandoz for distribution in the United States, pursuant to the Supply Agreement, was Introvale®, an oral contraceptive.

26. On April 22, 2015, an action entitled *Nicole Kinsey and Sophia Bernal, a minor, by*

*her Next Friend, Fernando Bernal v. Sandoz, Inc., and Meijer, Inc.,* Case No. 15-005390-NO (Michigan Circuit Court for the County of Wayne, Michigan) (the "*Kinsey* Case") was filed against Sandoz and a pharmacy, Meijer, Inc. ("Meijer"), alleging claims concerning the use of the oral contraceptive Introvale®.

27. The Complaint in the *Kinsey* Case alleged that, in 2013, the plaintiff Nicole Kinsey purchased Introvale®, which was distributed in the United States by Sandoz (as supplied by Defendant León Farma) and sold to Nicole Kinsey by Meijer.

28. The Complaint in the *Kinsey* Case alleged that, as the result of a packaging error, the inactive placebo tablets for the Introvale® oral contraceptive (which were manufactured and packaged by Defendant) were wrongly placed in the blister card Nicole Kinsey purchased and used, alleging that the placebo tablets were improperly placed in the 9th row as opposed to the 13th row.

29. The Complaint in the *Kinsey* Case alleged that, as a result of the claimed packaging error, Nicole Kinsey, who was 39 years old and had had four previous pregnancies with serious complications, unintentionally became pregnant and, as with her four prior pregnancies, experienced serious complications during the resulting pregnancy.

30. The Complaint in the *Kinsey* Case alleged that, as a result of the serious pregnancy complications experienced by Nicole Kinsey, she gave birth to Sophia Bernal prematurely at 24 weeks. Sophia Bernal allegedly weighed 1 lb. 5 oz. at birth, had serious medical problems, and continuing medical problems, due to her premature birth.

31. The Complaint in the *Kinsey* Case alleged that Sandoz had recalled Introvale® in 2012 due to the same alleged packaging error, and issued another recall in August 2013, but that such recall was not in time to prevent the pregnancy by the Nicole Kinsey plaintiff.

32. Prior to being served with the summons or Complaint in the *Kinsey* Case, Sandoz first became aware of the filing of the Complaint in the *Kinsey* Case on May 4, 2015, and on May 15, 2015, before service of process was effected on Sandoz or on the in-state defendant, Meijer, Sandoz removed the *Kinsey* Case to the United States District Court for the Eastern District of Michigan; the case was later remanded to Michigan Circuit Court on December 16, 2016.

**E. Sandoz' Notice to León Farma Demanding Indemnification for and Defense of the *Kinsey* Case Pursuant to Section 11.2 of the Supply Agreement**

33. By letter dated and sent on June 15, 2015, Sandoz provided written notice of the *Kinsey* Case, and the claims asserted in the *Kinsey* Case, to Defendants León Farma and Chemo Group (now known as Insud Pharma Group), and demanded indemnification for, and defense of, the *Kinsey* Case pursuant to Section 11.1 of the Supply Agreement.

34. Failing to receive any response to its June 15, 2016 notice, on August 10, 2016, Sandoz sent a second letter stating that, given the failure to provide a written response within 30 days, as required by Section 11.3 of the Supply Agreement, Sandoz would proceed with defense of the *Kinsey* Case and would reserve its rights for indemnification and reimbursement for its legal fees and expenses in defending the *Kinsey* Case.

35. On August 12, 2015, counsel for Defendant Chemo Group (now known as Insud Pharma Group) responded for itself and for León Farma to both the June 15 and August 10, 2016, letters from Sandoz.

36. In its letter of August 12, 2015, counsel for Defendant Chemo Group (now known as Insud Pharma Group), on behalf of itself and Defendant León Farma stated that Defendants denied any obligation to indemnify and defend Sandoz with regard to the *Kinsey* case, stating that it was relieved of its indemnification and defense obligations because, it contended, Sandoz had failed to give "timely notice" and asserted that it had been materially prejudiced by Sandoz'

decisions to: (1) accept a tender of defense from Meijer, (2) remove the *Kinsey* Case to United States District Court; and (3) file a motion to dismiss the *Kinsey* Complaint.

37. However, Defendants suffered no prejudice as a result of these, or any other actions, taken by Sandoz or its counsel prior Sandoz' notice of June 15, 2016, and by letter dated September 15, 2015, Sandoz' counsel disputed Defendants' contention of untimely notice, stating that Sandoz' notice was not untimely and that Defendant had not been prejudiced by: (a) Sandoz' acceptance, with a reservation of rights, of the tender of defense from Meijer (which Sandoz was obligated to do and which decreased the costs of defense); (b) the removal of the *Kinsey* Case to District Court (which was remanded on December 16, 2016); and (c) Sandoz' filing of a motion to dismiss for failure to state a claim in District Court (which was not adjudicated by the District Court due to the remand).

38. Sandoz continued to provide periodic updates to Defendants counsel on the status of, and activities in, the *Kinsey* Case and, at no time, did Defendant or its counsel revoke Defendants' denial of Defendants' obligation to indemnify Sandoz, or pay for the defense costs, with regard to the claims in the *Kinsey* case.

**F. Settlement of the *Kinsey* Case and Demand for Indemnification of the Settlement Amount and Reimbursement of Sandoz' Attorney's Fees and Costs**

39. During the pendency of *Kinsey* case, the *Kinsey* plaintiffs had initially demanded more than [redacted] to settle the case, which was reduced to [redacted] at a mediation on June 7, 2017.

40. With a firm trial date scheduled for January 22, 2018, the court in the *Kinsey* Case ordered a second mediation for October 30, 2017.

41. By letter dated October 18, 2017, Sandoz's counsel informed counsel for Defendants that the parties in the *Kinsey* Case were scheduled to participate in a court-ordered

mediation on October 30, 2017, and thereafter, prior to the mediation, counsel for Sandoz and for Defendants conferred by telephone concerning the upcoming mediation, during which telephone call Defendants' counsel did not in withdraw or alter Defendants' position that they had no obligation to indemnify Plaintiff Sandoz for the *Kinsey* case or for any settlement of the *Kinsey* case.

42. At the mediation on October 30, 2017, Sandoz agreed in principle to settle the *Kinsey* Case for [redacted], subject to a confidentiality agreement, which amount was a reasonable settlement amount, and which Sandoz determined and believed in good faith was a reasonable settlement amount, to settle and resolve the *Kinsey* Case. Shortly thereafter, Sandoz' counsel informed Defendants' counsel of the agreement in principle to settle and the settlement amount.

43. On November 20, 2017, Sandoz formally notified Defendant León Farma that the parties had reached an agreement in principle to settle the *Kinsey* case, disclosing the settlement amount, and demanding that Defendant indemnify Sandoz for the settlement amount and reimburse Sandoz for Sandoz's attorney's fees and costs incurred in connection with defending the *Kinsey* Case.

44. Defendants and its counsel did not respond to the November 20, 2017 notice letter from Sandoz.

45. The settlement of the *Kinsey* Case was approved by the Michigan Circuit Court on December 19, 2017; the Settlement Agreement was finalized and signed by Sandoz on January 16, 2018; Sandoz paid the settlement amount on January 29, 2018; and a final order of dismissal of the *Kinsey* case was entered by the Michigan Circuit Court on February 28, 2018.

**G. <u>The Parties' Informal Dispute Resolution Efforts</u>**

46. By letter dated March 12, 2018, Sandoz provided notice to Defendant León Farma,

invoking the informal dispute resolution process in Section 13.2 of the Supply Agreement with respect to Sandoz' claim against Defendant for Sandoz' attorney's fees and defense costs and indemnification of the settlement in the *Kinsey* Case.

47. In response, General Counsel for Defendant Insud Pharma Group requested that Sandoz provide the *Kinsey* Settlement Agreement and related documents concerning the settlement negotiations and mediation; documents relating to Sandoz' agreement with and acceptance of Meijer's tender of defense; documents showing the attorney's fees and costs incurred by Sandoz in defending the *Kinsey* case; and other documents requested by Defendant. Sandoz provided the requested materials.

48. On May 17, 2018, the President of Plaintiff Sandoz and the General Manager of Insud Pharma Group (on behalf of Defendant Insud Pharma Group and Defendant León Farma) met and engaged in a dispute resolution meeting at Insud Pharma Group's offices in Madrid, but were unable to reach a resolution of Sandoz' demand for indemnification of the *Kinsey* settlement and Sandoz' attorney's fees and defense costs in defending the *Kinsey* Case.

**COUNT ONE**
**(Breach of Contract for Indemnification of Plaintiff for the Settlement in the *Kinsey* Case)**

49. Sandoz repeats and realleges the allegations set forth above, in Paragraphs 1-48, as if fully set forth herein.

50. Under Section 11.1 of the parties' Supply Agreement, Defendant León Farma was obligated to indemnify and hold Plaintiff Sandoz harmless from and against any Liability paid or payable by Sandoz to the plaintiffs in the *Kinsey* case, including, but not limited to, the settlement amount paid by Sandoz.

51. Plaintiff Sandoz satisfied its obligations to provide prompt notice to Defendants of the *Kinsey* Case, and has otherwise complied with its obligations under the Supply Agreement.

52. In breach of Section 11.1 of the Supply Agreement, Defendants León Farma and Insud Pharma Group (formerly known as Chemo Group), controlling and dominating Defendant Leon Farma as its alter ego, wrongfully refused to indemnify and hold Sandoz harmless for the settlement payment made by Sandoz in the *Kinsey* Case.

53. Plaintiff Sandoz has been injured as a result of Defendant's breach and is entitled to its damages suffered as a result.

**COUNT TWO**
**(Breach of Contract for Reimbursement of Plaintiff's Attorney's Fees and Costs Incurred in Defending the *Kinsey* Case)**

54. Sandoz repeats and realleges the allegations set forth above, in Paragraphs 1-53, as if fully set forth herein.

55. Under Sections 11.1 and 11.3 of the parties' Supply Agreement, Defendant León Farma was obligated to defend Plaintiff Sandoz and to reimburse Sandoz for the attorney's fees and costs incurred by Sandoz in defense of the *Kinsey* Case.

56. Plaintiff Sandoz satisfied its obligations to provide prompt notice to Defendants of the *Kinsey* Case, and has otherwise complied with its obligations under the Supply Agreement.

57. In breach of Section 11.1 of the Supply Agreement, Defendants León Farma and Insud Pharma Group (formerly known as Chemo Group), controlling and dominating Defendant Leon Farma as its alter ego, wrongfully refused to reimburse Sandoz for the attorney's fees and costs incurred by Sandoz in defense of the *Kinsey* Case.

58. Plaintiff Sandoz has been injured as a result of Defendant's breach and is entitled to its damages suffered as a result.

**WHEREFORE,** Plaintiff Sandoz Inc. demands judgment against Defendants Laboratorios León Farma, S.A., Chemo España S.L. and Chemo Holding S.L., formerly known and doing

business as "Chemo Group" and now known and doing business as "Insud Pharma Group":

(a) Adjudicating and declaring that Defendants are obligated to indemnify, defend and hold plaintiff harmless for the claims in the *Kinsey* case, including, but not limited to, the settlement amount paid by Plaintiff, any additional amounts that Plaintiff may incur or be liable for as a result of the *Kinsey* Case, and for Plaintiffs attorney's fees and costs of defense incurred or to be incurred as a result of or in connection the *Kinsey* Case;

(b) Awarding Plaintiff its compensatory damages against Defendants including, but not limited to, the settlement amount paid by Plaintiff and the attorney's fees and defense costs incurred by Sandoz in defending the *Kinsey* Case, plus interest;

(c) Awarding Plaintiff its attorney's fees and costs in this action; and,

(d) Granting such other and further relief as the Court deems just and proper.

Dated: June 22, 2018

**GREENBERG TRAURIG, LLP**
500 Campus Drive, P.O. Box 677
Florham Park, NJ 07932-0677
T: (973) 360-7900
F: (973) 295-1257
By: */s/ Roger B. Kaplan*
Roger B. Kaplan
(kaplanr@gtlaw.com)
Attorneys for Plaintiff Sandoz Inc.